statistically significant differences between the two arms of the study in patients who had a drug-free period (DFP, from the date of last treatment with any anticancer treatment to the first study treatment) of greater than or equal to six months. Thirty-eight patients, 19 on each arm, had a DFP of six months or more. In this group, median progression-free survival was 3.5 months on the PLD arm versus not yet reached on the TELCYTA plus carboplatin arm (p □ 0.01). Median survival was 11.1 months on the PLD arm versus not yet reached on the TELCYTA plus carboplatin arm. The objective response rate (as assessed by the independent radiology review) was 31.6% on the TELCYTA plus carboplatin arm, as compared with 10.5% on the PLD arm.

89.    Then, on the evening of June 4, 2007, after the close of trading, the Company announced the FDA had ordered it to immediately cease all clinical trials of TELCYTA because data showed the drug *hastened* the deaths of women with advanced ovarian cancer. Simultaneously, Telik stated that no new patients would be enrolled on TELCYTA clinical trials, and that no patients currently being treated on the trials would receive additional treatment until the FDA releases the clinical hold.  That clinical hold was initiated by the FDA following the presentation of TELCYTA Phase 3 clinical trial results. The effect of this clinical hold stopped new patient enrollment in TELCYTA clinical trials, and the Company was prohibited from administering additional doses of the drug to those patients already enrolled in the trials.  In an associated press release, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced that the U.S. Food and Drug Administration (FDA) has placed a clinical hold on the Investigational New Drug (JND) application for TELCYTA® (canfosfamide HC1). The clinical hold was initiated by FDA following the presentation of TELCYTA Phase 3 clinical trial results at the annual meeting of the American Society of Clinical Oncology.

> No new patients will be enrolled on TELCYTA clinical trials, and no patients currently being treated on the trials will receive additional treatment until the FDA releases the clinical hold. Telik plans to submit to the FDA additional detailed safety and other information regarding TELCYTA and meet with the FDA regarding the clinical hold as soon as possible.

90.    The cumulative result of these materially misleading statements was to artificially inflate Telik's stock price during the Relevant Period.  When, on December 26, 2006, the Company was forced to reveal that TELCYTA had failed in all three arms of its final clinical testing – showing no efficacy in two of the three arms and impermissibly dirty clinical data in two of the three arms – the Company's stock plunged 70% in a single trading session – falling from over $16 per share to below $5 per share on more than 33 times the previous 30 days' average daily trading volume and erasing more than $600 million in market value.  The Company's stock price declined another 20% on June 3, 2007, when it disclosed that the ovarian cancer arm of the TELCYTA trial failed – with Telik again disclosing that the results had been compromised and subjects were improperly released early, tainting the data.  Following the Company's after hours announcement on the evening of June 4, 2007 that the FDA had ordered them to halt the clinical trials of TELCYTA, shares of the Company's stock declined an additional 41 percent, to close on June 5, 2007 at $3.42 per share, on unusually heavy trading volume.

## DERIVATIVE ALLEGATIONS

91.    Plaintiff brings this action derivatively pursuant to Rule 23.1 of the Federal Rules of Civil Procedure on behalf and for the benefit of the Company to remedy the wrongdoing alleged herein.

92.    Plaintiff will fairly and adequately represent the interests of the Company and has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

**DEMAND IS EXCUSED**

93.     Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein. Plaintiff did not make a demand on the Board to bring this action because such demand would be futile given the facts as alleged herein and, therefore, such a demand is excused.

94.     Telik is controlled by its Board, which currently consists of the following individuals: Wick, Butitta, Kaplan, Steuer, Cantrall, Frick, Goldring, Gray, Newman, Ryser, and von Morze.   All of these directors, with the exception of Kaplan, who did not become a director until 2006, are named as Defendants in this lawsuit and engaged in wrongful acts alleged herein.[1] Thus, they are not disinterested and cannot exercise independent business judgment on the issue of whether Telik should prosecute this action.   As a result, demand on Telik and its Board is futile and therefore excused.

95.     As summarized below and specified herein, demand is excused because this Complaint alleges with particularity that a majority of the members of the current Board intentionally or recklessly either: (1) directly participated in the wrongs alleged herein to benefit themselves at the expense of the Company; (2) ignored the clear risks of marketability of the Company's TELCYTA drug; (3) failed to adopt reasonable internal controls and independent monitoring systems to ensure the investing public was provided with accurate information on the marketability of the Company's TELCYTA drug; or (4) failed to implement reasonable protocols to ensure that the TELCYTA clinical trials were be conducted according the FDA standards to ensure that the data generated thereby would be worthy for FDA approval and commercialization

---

[1] Reinaldo F. Gomez ("Gomez"), while not currently a Telik director, is also a defendant in this action because from 2003 -2005 during the Relevant Period Gomez was Telik's Senior Vice President, Product Development, and a member of Telik's board of directors, and engaged the wrongs alleged herein. Defendant Brown is also a defendant because she has been Telik's Senior Vice President and Chief Medical Officer since November 2001 and has engaged in the wrongs alleged herein.

of TELCTYA.; and (5) failed to implement clinical trial safeguards such that patients taking TELCYTA would not die several months sooner than those not taking TELCYTA.

**Related Party Transactions**

96.     In order to bring an action for the breach of fiduciary duties alleged, the current members of the Telik Board would be required to sue themselves and/or their fellow directors of Telik, with whom they have extensive business and personal entanglements and interests. The Board of Directors, therefore, would not be able to vigorously pursue such an action.

97.     Defendant Wick is neither disinterested nor independent. Wick, throughout the entire Relevant Period, has been Telik's President, CEO and Chairman, and remains today the Chairman of the Board of Directors. By virtue of his high positions, it is unreasonable to expect that the Board of Directors would initiate such litigation or be able to prosecute a lawsuit against him, and hence demand is futile. As set forth herein, Wick directly and personally participated in numerous schemes and false public presentations and analysts conferences to hide the truth about the dangers of TELCYTA and its disastrous clinical trial results, and to enrich himself at the expense and to the detriment of the Company. Wick's blatant violations of his fiduciary duties of care and loyalty render him incapable of considering a demand in respect to his direct personal interest in the conduct and transactions challenged herein. Indeed, Wick's conduct was so facially egregious that it could not have been the product of sound business judgment. Wick has long-standing personal and business relationships with members of the Board and other officers at the Company that make him manifestly interested and not independent.

98.     As a prime example, in the Company's Definitive 2006 Proxy, the Company stated that Brown, Wick's wife, has been the Company's Senior Vice President and Chief Medical Officer since 2001. Brown's compensation in 2006 included an annual salary of

$390,000, an option grant of 100,000 shares at an exercise price of $20.30 per share and a bonus award in the amount of $375,000 for services provided to the Company in 2005.

99.    Pursuant to the Company's 2006 Definitive Proxy, the Audit Committee - the Charter and guidelines for which are set forth below - reviews and approves in advance all related-party transactions. The Audit Committee's allowance of the hiring and excessive compensation of Brown, who was primarily responsible for disseminating the materially false and misleading information, was and is inconsistent with the best interests of the Company and its stockholders and was not a good faith exercise.

100.    Further, Defendants Wick and Cantrall both worked for Lederle Laboratories from 1990-1994. The above relationships will prevent Wick and the other Board members from prosecuting the derivative claims asserted herein.

### Reasonable Doubt Exists That The Individual Defendants Are Entitled To Business Judgment Protection

101.    For the reasons set forth below, a reasonable doubt exists that the Board's materially misleading statements about the efficacy and safety of TELCYTA were the product of a valid exercise of business judgment. In fact, the above actions were irrational, were accomplished in bad faith, and violated the Individual Defendants' fiduciary duty of loyalty.

102.    The Individual Defendants had a fiduciary duty to inform themselves, prior to making a business decision, of all material information reasonably available to them. In addition, as described below, certain Individual Defendants assumed heightened obligations through their membership on Telik's Audit Committee, which also imputed specific knowledge to them.

60

**The Audit Committee**

103.    The Company has an Audit Committee, which imposes heightened duties on its members. In particular, the committee's charter provides that members are charged with, *inter alia,* the following duties and responsibilities:

- In accordance with its written charter, the Audit Committee reviews and approves in advance all related-person transactions. A related person is any executive officer, director, or more than 5% stockholder of the Company, including any of their immediate family members, and any entity owned or controlled by such persons. In determining whether to approve, ratify or reject a related-person transaction, the Committee looks at, in light of known circumstances, whether the transaction is in, or is not inconsistent with, the best interests of the Company and its stockholders, as the Committee determines in the good faith exercise of its discretion.

104.    Individual Defendants Cantrall, Ryser and Frick serve or have served on the Audit Committee and thus have or had the heightened duties and responsibilities described above. Consequently, the Board will not sue these Individual Defendants since they would have to sue themselves, and hence demand is futile because they would not initiate such litigation, nor be able to prosecute any such action. Thus, none of the Individual Defendants is in a position to exercise independent business judgment with respect to the claims alleged herein due to each of their participation in the wrongful conduct giving rise to the claims asserted herein, which have damaged and will continue to damage Telik.

105.    Demand is also excused because the defendants' conduct was so egregious on its face that it could not have been the product of sound business judgment. To the contrary, the

wrongdoing and harm alleged in this Complaint flows directly from the Individual Defendants' deliberate and conscious decision to permit the sustained and/or systematic fraudulent and material representations set forth herein. Specifically, the Individual Defendants participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Telik's stockholders or recklessly disregarded the wrongs complained of herein, and are therefore not disinterested parties. Each of the Directors exhibited a sustained and systemic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness.

106. Because many of the wrongful acts at issue presently are the subject of ongoing FDA investigation and litigation, the Company's Board of Directors cannot be expected to reach a truly independent and objective decision about whether to commence and prosecute this Action against themselves for the wrongful acts at issue.

107. Accordingly, the Individual Defendants, together constituting a majority of the Board, as of the filing of this Action, face a substantial likelihood of liability from an action asserting the claims alleged herein, thus disabling the Board from being capable of making a disinterested, independent decision about whether to prosecute this action.

## FIRST CAUSE OF ACTION
### (Against all Defendants for Breach of Fiduciary Duty)

108. Plaintiff incorporates by reference and realleges each and every allegation set forth above as if set forth fully herein.

109. The Individual Defendants owed and owe Telik fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Telik the highest obligation of loyalty and due care.

110.    The Individual Defendants, and each of them, violated and breached their fiduciary duty of loyalty.

111.    To discharge these duties, Defendants were each required to exercise reasonable and prudent supervision over the management, policies, practices, controls and financial affairs of Telik, and to insure that Telik issued truthful statements about its financial condition. This obligation of due care and diligence required, among other things, that Defendants do the following:

- exercise reasonable control and supervision over the officers, employees and agents of Telik;

- remain informed as to how Telik conducted its operations;

- ensure the prudence and soundness of the policies and practices undertaken or proposed to be undertaken by Telik;

- ensure Telik complies with its legal obligations and requirements, including the duty to disseminate truthful and accurate statements to the SEC and the investing public;

- make a reasonable investigation upon receiving notice or information of an imprudent or unsound decision, condition, or practice, and take steps to correct any imprudent or unsound decision, condition, or practice; and

- conduct the affairs of Telik in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business and to thereby maximize the profits to its stockholders.

112.    By reason of their positions, and because of their ability to control the business and corporate affairs of Telik, at all relevant times, Defendants owed to Telik, and to its

63

stockholders, fiduciary obligations of fidelity, trust, loyalty, and due care, and were required to control the company in a fair, just and equitable manner and to act in furtherance of the best interests of the company and its stockholders.

113.   By committing the acts alleged above, Defendants breached their fiduciary duties to Telik. Had Defendants properly discharged their obligations and duties, they could have prevented the harm caused to Telik as alleged herein.

114.   As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Telik has sustained significant damages.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

115.   Plaintiff, on behalf of Telik, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.   Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

B.   Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to ensure that Plaintiff has an effective remedy;

C.   Awarding to Telik restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by these Defendants;

64

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 4, 2007

Respectfully submitted,

**RIGRODSKY & LONG, P.A.**

By: _____

Seth D. Rigrodsky (SR-9430)
Brian D. Long
919 North Market Street, Suite 980
Wilmington, DE 19801
Tel.: (302) 295-5310
Fax: (302) 654-7530

**MOTLEY RICE LLC**
Ann K. Ritter
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC  29465
Tel.: (843) 216-9000
Fax: (843) 216-9450

-- and --

**MOTLEY RICE LLC**
James M. Evangelista (JE-1246)
600 West Peachtree Street, Suite 800
Atlanta, GA  30308
Tel.: (404) 201-6900
Fax: (404) 201-6959

*Attorneys for Plaintiff*